**STATE of Tennessee, Appellee,**

v.

**David L. WASHINGTON, Appellant.**

Court of Criminal Appeals of Tennessee, Knoxville.

Sept. 29, 1983.

Permission to Appeal Denied by Supreme Court Nov. 28, 1983.

B.C. McInturff, Kingsport, for appellant.

William M. Leech, Jr., Atty. Gen., Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., H. Greeley Wells, Asst. Dist. Atty. Gen., Blountville, for appellee.

## OPINION

RICHARD R. FORD, Special Judge.

Following his retrial the appellant-defendant, David L. Washington, appeals as of right his convictions and the resulting judgments consisting of a sixty (60) year sentence for rape, a consecutive sentence of not less than ten (10) nor more than fifteen (15) years for first degree burglary, a concurrent sentence of not less than six (6) nor more than ten (10) years for grand larceny, and a concurrent sentence of not less than two (2) nor more than five (5) years for petit larceny. All the offenses were committed on October 31, 1976, in a single episode. The retrial was conducted on September 27–28, 1982.

We affirm the judgments.

On appeal the defendant has raised the issues of the sufficiency of the evidence; whether the trial court prejudicially delayed its ruling on the applicable range of punishment for rape; whether the trial court erroneously overruled the defendant's motion to dismiss the rape indictment; whether the trial court erroneously instructed the jury on the definition of rape and the applicable ranges of punishment; whether the rape indictment provided the defendant sufficient notice; whether it was

error to require the defendant to again go to trial on the charges of burglary, grand larceny and petit larceny; whether the trial court erroneously overruled the defendant's motion to reduce those of his sentences which exceeded those of his first trial; and whether the trial court properly ordered the burglary sentence to be served consecutively.

A summary of the evidence reveals that on October 31, 1976, the defendant and the victim, a divorcee, each had an apartment in the Chadwick Apartment Complex in Kingsport. The victim's testimony included that she was awakened between 3:00 and 4:00 a.m. by a knock on her door, that on opening the door she saw the defendant who said he had had a car wreck and needed to use the telephone; that without invitation the defendant entered and asked if she "had ever loved a black man before?" He then struggled and fought with her in the living room as he removed her gown. The defendant forced her into the bedroom where he forcibly engaged her in sexual intercourse on three (3) separate occasions. When the telephone rang at 5:30 a.m. the defendant was on top of her again, but he got up, dressed and left. The defendant was a stranger to her.

The phone caller was one of two co-workers who regularly called the victim at 5:30 a.m. to awaken her to get ready for work. Rushing to her apartment, the victim's foreman and another co-worker observed her condition. Her foreman described her state of hysteria; that she "was crying real hysterical." "Her mouth was busted up real bad, and there were bruise marks on her neck." He further described the bruise marks on her neck as, "[w]ell, it looked like hand prints had caused them from someone's hands choking them." There was corroborating medical evidence of the victim's injuries, and evidence that she has type "O" blood, and that the defendant has type "AB" blood, the latter type being found on the bedding along with hair specimens identified as negroid.

After arrival of the victim's co-workers it was discovered that the victim's car keys and ten dollars ($10.00) were missing. Also, the victim's new 1976 model Ford Elite automobile was missing. After the arrival of the police, a National Crime Information Center report was made resulting in the defendant's arrest at 8:18 p.m. the same day near Salisberry, North Carolina. The defendant was found in the victim's automobile.

Testifying in his own behalf, the defendant said that he and the victim were acquainted; that they had discussed personal domestic problems; that he had borrowed the automobile, and that he had done so on previous occasions; that he had been in her apartment before and that on one occasion he had vacuumed her carpets. He admitted going to her apartment on October 31, 1976, at 2:30 to 3:00 a.m., or "it could have been later." He testified that he was invited in by the victim who "was crying, her gown was torn, she had a split lip and a bruise on her neck." He said that she explained that her ex-husband had been there; that her ex-husband had found out that she had been dating the defendant, and that they got into a fight. The defendant testified he remained there only "fifteen (15) or twenty (20) minutes at the most," and that "she gave me the car keys, I left."

First, we note there was ample evidence, indeed overwhelming evidence, to support the verdicts of guilty as charged and as approved by the trial court. The guilty verdicts of the jury, as approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. *State v. Hatchett,* 560 S.W.2d 627 (Tenn. 1978). The relevant question on appeal is whether after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *State v. Tuggle,* 639 S.W.2d 913 (Tenn.1982); *State v. Patton,* 593 S.W.2d 913 (Tenn.1979).

■ As to each conviction, viewing the evidence in the light most favorable to the State, as we are required to do, we have determined that there is ample evidence to justify a rational trier of fact in finding the defendant guilty of the charged offenses beyond a reasonable doubt. *T.R.A.P.* 13(e); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). There is no merit to this issue.

Next, the defendant insists that the trial court erred by waiting until the day of trial to consider the defendant's motion for a ruling as to the applicable range of punishment for rape as charged in the indictment. He argues that the delay deprived him of a plea bargain opportunity for a fourteen (14) year sentence for the offense of rape.

■ There is no merit to the asserted "loss" of a plea bargain as being a deprivation of the defendant's constitutional rights. This issue is not of constitutional dimension. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed. 162 (1970); *McCollum v. State,* 532 S.W.2d 63, 65 (Tenn.Cr.App. 1975). Moreover, the trial court's waiting until the day of trial to rule did not adversely affect the defendant's right to appeal. *See Tenn.R.Crim.P.* 12(e).

Next, the defendant asserts that he was tried under an *ex post facto* rape statute (T.C.A. § 39–3701); that the trial court erroneously instructed the jury on the definition of rape based on a repealed statute; that the trial court erroneously instructed the jury on ranges of punishment and erred in charging personal injury, an element of aggravated rape not included in the definition of rape at the time of the offense; further that the trial court erred in overruling the motion to dismiss the indictment.

T.C.A. § 39–3701, in effect at the time of the defendant's offense, provided the then applicable definition of rape, and consequently still applicable on the defendant's September 27–28, 1982, retrial:

> Rape is the unlawful carnal knowledge of a woman, forcibly and against her will.

Carnal knowledge is accomplished by the commencement of a sexual connection, and proof of emission is not required.

■ The indictment for rape was in proper form. The defendant's motion to dismiss it was correctly overruled. The elements for proof of the indicted 1976 offense of rape never changed. The State had the same burden in the 1982 retrial as it had in the original trial. The defendant was indicted and tried for what we now refer to as rape in its inclusive form. Since 1976 the Legislature has enacted various statutes which generally provided for lesser punishment for less aggravated forms of rape. At the time of the defendant's offense, T.C.A. § 39–3702 prescribed the applicable range of punishment:

> Whoever is convicted of the rape of any female over the age of twelve (12) years shall be punished by imprisonment in the penitentiary for life or for a period of not less than ten (10) years.

At the time of his retrial the defendant was entitled to ask for the benefit of a jury instruction on any lesser range of punishment adopted by the Legislature in the interim between the offense and retrial. *See* T.C.A. § 39–1–105. Such lesser punishment ranges were logically prescribed for less aggravated offenses of rape, e.g., as where the rapist caused no physical injury.

Former §§ 39–3701 and 39–3702, *inter alia,* were repealed by Public Acts 1978 (Adj.S.) Ch. 937, § 10, effective May 11, 1978, and "The Sexual Offenses Law of 1977" was substituted therefor. The range of punishment prescribed in this substituted Act for "first degree criminal sexual conduct," which included the proscribed act of criminal sexual conduct formerly referred to as rape, was also "imprisonment in the penitentiary for life or for a period of not less than ten (10) years." T.C.A. § 39–3703(B).

Effective June 5, 1979, the foregoing 1977 sexual offense law was repealed by the enactment of "The Sexual Offenses Law of

1979" enacted as T.C.A. §§ 39–3701—39–3710. Where adults were involved the range of punishment for "aggravated rape" was by imprisonment in the penitentiary for life or for a period not less than fifteen (15) years. The statutory range for "rape" was imprisonment in the penitentiary for a period of not less than five (5) nor more than fifteen (15) years. More changes were to follow.

The Sexual Offenses Law of 1979 was amended effective February 14, 1980. Public Acts, 1980 Ch. 463. The range of punishment for aggravated rape was increased to "imprisonment in the penitentiary for life or a period of not less than twenty (20) years." The range for rape was increased to "imprisonment in the penitentiary for a *determinate* sentence not less than five (5) years nor more than twenty (20) years." In 1982, at the time of the defendant's retrial, and as of the present, the foregoing statutory punishment ranges were and are in effect. *See* T.C.A. §§ 39–2–603 and 39–2–604.

Recognizing that by reason of the post offense changes in the law of rape that there was a legitimate issue regarding the range of punishment, the trial judge *sua sponte* included in his instructions to the jury the following:

If you find beyond a reasonable doubt that the defendant committed the offense of rape and also you find beyond a reasonable doubt that the defendant inflicted bodily injury upon the victim during the commission of such rape, then you will find the defendant guilty of rape and fix the punishment at some definite term of years of not less than ten (10) years or life imprisonment.

On the other hand, if you find beyond a reasonable doubt that the defendant committed the offense of rape, but further find that no personal injury was inflicted upon the victim or have a reasonable doubt thereof you will find the defendant guilty of rape and fix the punishment, specifying minimum and maximum terms. You may fix the minimum sentence at a definite time of not less than five (5) years nor more than ten (10) years, and you may fix the maximum sentence at a definite time of not less than five (5) years nor more than fifteen (15) years. The maximum punishment must be fixed at a time equal to or greater than the minimum term.

■ It is noted that in each foregoing instance of an alleged offense of rape, the trial court accorded the defendant the benefit of an instruction on the lowest applicable range of punishment. It was not error to instruct as to the difference between "rape *without* personal injury" and "rape *with* personal injury" where the purpose of such instruction was to enable the jury to consider the lesser punishment range if there had been no showing of personal injury beyond a reasonable doubt. The proscribed act of rape, in its inclusive form, included rape with aggravation.

The jury returned a verdict of "guilty of rape with personal injury" for which punishment was fixed at sixty (60) years imprisonment. The verdict was sufficient to conform to the original charge of rape. The Supreme Court, in a recent opinion written by Justice Cooper, observed:

T.C.A. § 39–2–603(a)(2) proscribes aggravated rape and thus necessarily incorporates the definition of rape, being but an aggravated form of the same offense.

*State v. John Anthony Wilkins,* 655 S.W.2d 914 (Tenn.1983).

The defendant's assertions challenging the validity of the indictment, the trial court's rulings thereon, and challenging the trial court's instructions to the jury, are found to be without merit.

■ The defendant next contends that the indictment for rape did not give him sufficient notice. We have held, as above stated, that the defendant was properly indicted for rape, the indictment being in the statutory language effective as the time of the offense. T.C.A. § 39–3701. The legal sufficiency of an indictment is determined by the adequacy of notice to the defendant. *State v. Overton,* 193 Tenn. 71, 245 S.W.2d 188 (1951). The specificity of the indict-

ment is sufficient to protect the defendant from any risk of double jeopardy. On the retrial of the case the defendant demonstrated his familiarity with the charge. This issue is meritless.

The defendant also contends that the trial court erred in refusing to dismiss the indictment for rape which he insists was based on a statute, T.C.A. § 39–3701, which is unconstitutional, for the reason that only a woman can be a victim of rape.

This constitutional issue has been considered and rejected by this Court in a previous case where we noted:

> Section 39–3701 is clearly intended to protect women from unlawful forced sexual intercourse against her will, and possible resulting forced pregnancy and infection with venereal disease and such protection is not only a legitimate state purpose but a state duty. It follows therefore, that the sex classification contained in said statute is reasonable and bears a fair and substantial relationship to the object of the law.

*Stewart v. State,* 534 S.W.2d 875–76 (Tenn. Cr.App.1975). T.C.A. § 39–3701, on which the defendant's indictment was based, is not constitutionally defective. We conclude that there was no violation of the defendant's constitutional rights and that the trial court correctly overruled the motion to dismiss the indictment.

Next, the defendant contends that the trial court erred in requiring that the defendant again go to trial on the charges of burglary, grand larceny and petit larceny for the reason that he was without personal knowledge that he would again be prosecuted for such offenses.

This issue is repugnant to the defendant's previous insistence that he should be granted the retrial of which he now complains. In the post-trial motion hearing the defendant testified about pretrial plea bargain discussions wherein his attorney had informed him that the State was not going to prosecute him again for burglary and the two (2) larcenies. There is no corroboration of the defendant's testimony as to such lack of State intention, nor did the defendant make any contemporaneous or timely objection. *See* Rule 12(f), *Tenn.R. Crim.P.* This meritless issue . has been waived.

The defendant's insistence that the trial court erroneously refused to reduce the punishments received on retrial for first degree burglary, grand larceny and petit larceny to conform to the lesser sentences received on the original trial is without merit.

The purpose of T.C.A. § 40–20–101(b), providing authority for the trial court to modify a jury verdict on retrial, is not mandatory, but permissive. Its use is limited to cases wherein the trial court makes a finding on a motion for a new trial that the harsher sentence of a retrial jury is the result of knowledge of former trial sentencing, and with evidence of vindictiveness. The record is devoid of retaliatory motivation by the retrial jury which had no knowledge of what determinations were made during the original trial. *Sommerville v. State,* 521 S.W.2d 792, 798 (Tenn. 1975).

Finally, we have considered the defendant's insistence that the trial court erred in ordering the burglary sentence to be served consecutively to the rape sentence.

Although the defendant's sentences for grand and petit larceny were ordered to be served concurrently with the rape sentence, the trial court found that the evidence adduced at the retrial showed the defendant to be a dangerous offender, and following the guidelines of *Gray v. State,* 538 S.W.2d 391 (Tenn.1976), ordered consecutive sentencing as to the burglary sentence. Considering the nature of the offenses, the defendant's violence, the shock, injuries and losses suffered by the victim, we have determined that the trial court's order of consecutive sentencing is amply supported by the proof.

All judgments are affirmed.

DUNCAN and CORNELIUS, JJ., concur.